# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

MUHAMMED BAZZI        )
                             )
        Plaintiff,      )
                             )        **Case No. 5:11-cv-00353-H**

vs.                   )
                             )

PA NDERRY M'BAI,      )     **JUDGE MALCOLM J. HOWARD**
FREEDOM NEWSPAPER, INC. AND )
JOHN DOE            )
                             )
        Defendants.   )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

GOVERNING STANDARDS .................................................................................................. 2

ARGUMENT ........................................................................................................................ 3

    I.    Plaintiff Fails to State a Claim for Defamation Per Se ................................................ 3

        A.  The Complaint Does Not Identify with Specificity the Statements that are Alleged to Be False and Defamatory ................................................................................................ 4

        B.  The Statements Allegedly Made in the Article are not Defamatory Per Se ............................. 5

        C.  The Complaint Does Not Plausibly Allege Defendants Made Any Statements With Actual Malice ................................................................................................................................ 7

    II.    Plaintiff Fails to State a Claim for Tortious Interference with Prospective Economic Advantage .. 8

        A.  Interference Claims Based Upon Alleged Defamation Fail When The Defamation Claim Fails .................................................................................................................................... 9

        B.  The Complaint Does Not Plausibly Allege Any Potential Contract Knowingly or Intentionally Frustrated by the Defendants ............................................................................. 10

        C.  The Complaint Does Not Plausibly Allege that Defendants Acted Without Justification ...... 11

    III.    Plaintiff Fails to State a Claim for Punitive Damages and Permanent Injunctive Relief ............... 12

        A.  The Complaint Improperly Pleads Punitive Damages and Injunctive Relief as Causes of Action .................................................................................................................................. 12

        B.  The Complaint Fails to Sufficiently Allege Facts Supporting Punitive Damages ................. 13

        C.  The Complaint Fails to Show Why Plaintiff Should be Entitled to Injunctive Relief Against the Defendants ...................................................................................................................... 13

    IV.    Plaintiff's Allegations in Paragraph 29 of the Complaint Should be Stricken .............................. 15

CONCLUSION ...................................................................................................................... 16

CERTIFICATE OF SERVICE ................................................................................................ 17

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937 (2009) ...................................................... 2

*Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*, 501 F. Supp. 2d 738 (M.D.N.C. 2007) ......................................................................................................................................... 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 3

*CACI Premier Technology, Inc. v. Rhodes*, 536 F.3d 280 (4th Cir. 2008) ...................... 7

*Carrroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175 (1968) ............... 14

*Diario El Pais, S.L. v. Nielsen Co.*, 2008 U.S. Dist. LEXIS 92987 (S.D.N.Y. Nov. 6, 2008)........................................................................................................................................ 7

*Eli Research Inc. v. United Communs. Group, LLC*, 312 F. Supp. 2d 748 (M.D.N.C. 2004) ....................................................................................................................................... 12

*Esancy v. Quinn*, 2006 U.S. Dist. LEXIS 8479 (W.D.N.C. 2006) ................................. 10

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Board of Culinary Workers*, 542 F.2d 1076 (9th Cir. 1976)........................................................................ 7

*Freedman v. Maryland*, 380 U.S. 51 (1965)................................................................... 15

*Haylash v. Volvo Trucks N. America*, 1998 U.S. Dist. LEXIS 12511 (D.N.C. Apr. 10, 1998)...................................................................................................................................... 12

*Jackson v. Mecklenburg County*, 2008 U.S. Dist. LEXIS 104410 (W.D.N.C. July 30, 2008)........................................................................................................................................ 4

*Jolly v. Academy Collection Serv.*, 400 F. Supp. 2d 851 (M.D.N.C. 2005)..................... 4

*Lemons v. Myco Group Co.*, 667 F. Supp. 665 (S.D. Iowa 1987) ................................. 14

*Metropolitan Opera Association v. Local 100, Hotel Employees & Restaurant Employees International Union*, 239 F.3d 172 (2d Cir. 2001)........................................................ 14

*NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982)................................................. 14

*N.C. Mutual Life Insurance Co. v. McKinley Finance Services*, 386 F. Supp. 2d 648 (M.D.N.C. 2005)..................................................................................................................... 9

*Near v. Minnesota*, 283 U.S. 697 (1931) ...................................................................... 14

*New York Times Co. v. United States*, 403 U.S. 713 (1971)........................................... 2

*New York Times v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) ...... 7

Case 5:11-cv-00353-H   Document 6   Filed 09/29/11   Page 3 of 22

*Organization For A Better Austin v. Keefe*, 402 U.S. 415 (1971) .................................................. 14

*RDLG, LLC v. RPM Group LLC*, 2010 U.S. Dist. LEXIS 142881 (W.D.N.C. Dec. 21, 2010) ................................................................................................................................................ 5

*Ryan v. Brooks*, 634 F.2d 726 (4th Cir. 1980) ............................................................................ 7

*Speedway Promoters, Inc. v. Hooter's of America, Inc.*, 123 F. Supp. 2d 956 (W.D.N.C. 2000) ................................................................................................................................................ 9

*Sunward Corp. v. Dun & Bradstreet, Inc.*, 568 F. Supp. 602 (D. Colo. 1983), *aff'd in part and rev'd in part on other grounds*, 811 F.2d 511 (10th Cir. 1987) .......................................... 14

**STATE CASES**

*Andrews v. Elliot*, 109 N.C. App. 271, 426 S.E.2d 430 (1993) ..................................................... 10

*Bloch v. Paul Revere Life Insurance Co.*, 143 N.C. App. 228 (2001) ......................................... 12

*Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4 ................................................................... 11

*Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954) ........................................................... 11

*Dalton v. Camp*, 353 N.C. 647, 548 S.E.2d 704 (2001) .............................................................. 10

*Donovan v. Fiumara*, 114 N.C. App. 524, 442 S.E.2d 572 (1994) ................................................. 6

*Ellis v. Northern Star Co.*, 326 N.C. 219, 388 S.E.2d 127 (1990) ................................................. 5

*Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 541 S.E.2d 733 (2001) .............................. 12

*Holleman v. Aiken*, 193 N.C. App. 484, 668 S.E.2d 579 (2008) ................................................... 11

*Leonard v. Johns-Manville Sales Corp.*, 309 N.C. 91, 305 S.E.2d 528 (1983) .............................. 9

*Morrow v. Kings Department Stores*, 57 N.C. App. 13, 290 S.E.2d 732 ....................................... 4

*Peoples Security Life Insurance Co. v. Hooks*, 322 N.C. 216, 367 S.E.2d 647 *reh'g denied*, 322 N.C. 486, 370 S.E.2d 227 (1988) .............................................................................. 12

*Renwick v. News And Observer Public Co.*, 310 N.C. 312, 312 S.E.2d 405 (1984) ....................... 5

*Robinson, Bradshaw & Hinson, P.A.*, 129 N.C. App. at 317-18, 498 S.E.2d at 850 .................... 12

*Searle v. Johnson*, 709 P.2d 328 (Utah 1985) ............................................................................. 15

*Shella v. Foster*, 2006 N.C. App. LEXIS 1216 (N.C. Ct. App. June 6, 2006) ............................. 13

*Smith v. Ford Motor Co.*, 289 N.C. 71 (N.C. 1976) ..................................................................... 10

iii

*Thomas v. Sellers*, 142 N.C. App. 310, 542 S.E.2d 283 (2001) ...................................................... 13

*Ugochukwu v. Ugochukwu*, 176 N.C. App. 741, 627 S.E.2d 625 (2006) ........................................ 9

*Varner v. Bryan*, 113 N.C. App. 697, 440 S.E.2d 295 (1994) ......................................................... 7

*Walker v. Sloan*, 137 N.C. App. 387, 529 S.E.2d 236 (2000) ........................................................ 10

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(f) .......................................................................................................................... 15

**STATE STATUTES**

N.C. Gen. Stat. § 8-4 (2011) .............................................................................................................. 9

N.C. Gen. Stat. § 1A-1, Rule 44.1 (2011) .......................................................................................... 9

N.C. Gen. Stat. § 1D-15 ................................................................................................................... 13

N.C. Gen. Stat. § 1D-5(7) ................................................................................................................ 13

**MISCELLANEOUS**

1 *William S. Haynes. North Carolina Tort Law*, §13-3 (1989) ........................................................ 10

Robert D. Sack, *Sack on Defamation* § 10.6.1 at 10-54 (3d ed. 1999) ........................................... 14

iv

## PRELIMINARY STATEMENT

Pa Nderry M'Bai is the managing editor, publisher, and sole owner of Freedom Newspaper, Inc. (collectively "Defendants"). Mr. M'Bai is an experienced journalist with a degree in Mass Communication from Axia College of University of Phoenix. Prior to seeking political asylum in the United States in 2004, Mr. M'Bai worked as a Senior Staff Reporter with the Daily Observer and the Point Newspaper in The Gambia. Mr. M'Bai has also served as the Secretary General of The Gambia Press Union, the Banjul Correspondent for the Voice Of America Radio Africa Service, and as the Africa Correspondent for the U.S.-based Blogger news network.

In 2005, M'Bai founded the Freedom Newspaper, an online newspaper based in Raleigh, North Carolina. Freedom Newspaper grew out of the increasing censorship of the press in The Gambia, and since its founding Mr. M'Bai and his colleagues have sought to ensure that Gambian citizens at home and abroad remain informed about important social and political news and events in The Gambia, including instances of official graft, corruption and rights abuses in the tiny West African country.

On June 29, 2011, Plaintiff Muhammed Bazzi ("Plaintiff" or "Bazzi") filed a Complaint in this Court against the Defendants, and on September 8, 2011 Defendants were served with a copy of that Complaint. The Complaint alleges that Defendants made a number of allegedly defamatory statements about the Plaintiff in an article published on the Freedom Newspaper website on February 26, 2011 (the "Article"), a true and correct copy of which is attached hereto as Exhibit A. The Complaint does not quote any statements from the Article nor does it attach a copy of the Article as an exhibit. Based on his contention that statements in the Article are libelous, Plaintiff seeks damages for defamation per se (Claim I) and tortious interference with prospective economic advantage (Claim II). He also seeks punitive damages (Claim III) and injunctive relief (Claim IV).

Plaintiff's Complaint contains few allegations of fact to support the inferences and legal conclusions contained in the Complaint. As demonstrated below, the Complaint does not allege the essential elements of Plaintiff's claims, nor does it contain sufficient factual bases to constitute the alleged causes of action. The Complaint should also be dismissed because the Plaintiff does not have a clear

legal right to the relief that he seeks -- an injunction against the publication of *any* statements about the Plaintiff. In fact, the injunctive relief requested is not permitted either under First Amendment or common law principles and there is no likelihood that liability for damages will be established because the Plaintiff is a public figure who cannot prevail on any of his claims absent clear and convincing evidence of actual malice.

The Complaint also contains a number of allegations in Paragraph 29 regarding Defendants' alleged failure to abide by an injunction imposed by a Summary Procedures Judge in Beirut. These allegations are immaterial, prejudicial, and have no basis in fact. A review of the order providing the alleged basis for the claims made in Paragraph 29 (a copy of which is attached hereto as Exhibit B) reveals that not only is the order directed at an unrelated third party, but there is also not a single mention of the Defendants in the order or any evidence to suggest that they were even a party to the proceeding. Accordingly, the Court should strike Paragraph 29 of the Complaint.

Finally, Plaintiff's Complaint should be dismissed because the public interest is served by continuing debate and discussion regarding the activities and events described in the Article, particularly given the upcoming presidential election in The Gambia this November. A public official such as the Plaintiff should not be permitted to chill either public debate over important affairs or the Defendants' First Amendment rights by virtue of a lawsuit that asks this Court to impose an absolute prior restraint on a newspaper that prohibits it from publishing any article containing any mention whatsoever of the Plaintiff. *See New York Times Co. v. United States*, 403 U.S. 713, 728 (1971) (Stewart, J., concurring) ("[A] press that is alert, aware, and free most vitally serves the basic purpose of the First Amendment. For without an informed and free press there cannot be an enlightened people.").

The Complaint should be dismissed with prejudice.

## GOVERNING STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009). While the standard does not require "detailed factual allegations," it does

demand "more than an unadorned, the- defendant-unlawfully-harmed-me accusation." *Id.* A pleading that "tenders naked assertions devoid of further factual enhancement," or offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," fails to meet this standard and must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court confirmed in *Iqbal* that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citing *Twombly*, 550 U.S. at 556).

In reviewing a motion to dismiss, a court therefore first separates the bald legal conclusions from the well-pleaded factual allegations. *Iqbal*, 129 S. Ct. at 1950. Then, it addresses the well-pleaded allegations to determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 1949. A complaint is only "plausible on its face" when it contains "content that allows the court to draw a reasonable inference that the defendant is liable for the conduct alleged." *Id.* Complaints pleadings facts that are "merely consistent with a defendant's liability" fail as they "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* This is especially true when the Complaint alleges facts that support an "obvious alternative explanation" more strongly than they support any inference of illegality. *Id.* at 1951-52.

**ARGUMENT**

I. Plaintiff Fails to State a Claim for Defamation Per Se

Claim I of the Complaint for defamation per se suffers from several fatal flaws. It does not specifically identify the statements alleged to be false and defamatory. The statements it does contest are not defamatory per se. The Complaint also fails to plead "actual malice" as is required when a public figure such as the Plaintiff brings a cause of action for libel. Each of these flaws represents an independent and adequate ground for dismissing the Plaintiff's defamation claim.

3

**A.      The Complaint Does Not Identify with Specificity the Statements that are Alleged to Be False and Defamatory**

"In pleading a cause of action for defamation, a plaintiff must recount the allegedly defamatory statement either verbatim or at least with enough specificity to allow the Court to decide if the statement is defamatory."  *Jolly v. Acad. Collection Serv.*, 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005) (citing *Morrow v. Kings Department Stores*, 57 N.C. App. 13, 21, 290 S.E.2d 732, 737, *disc. review denied*, 306 N.C. 385, 294 S.E.2d 210 (1982)).  Here, the Plaintiff not only fails to attach a copy of the Article to his Complaint but he also neglects to quote a single statement from the Article or to otherwise set forth any allegedly defamatory statement *in haec verba*.  Instead, the Complaint makes general allegations regarding the content of the Article that are confusing and misleading and that fail to provide enough specificity to allow the Court to decide whether any such statements are defamatory per se.

The allegations made in paragraphs 9 to 12 of the Complaint in support of Plaintiff's defamation claim do not make clear which specific statements in the Article are alleged to be false and defamatory. Paragraph 9 broadly states that the Article "alleges that this 'Mafia' is involved in a staggering number of criminal enterprises" and lists a handful of subject areas but with no further explanation or detail.  Such a broad, conclusive allegation is insufficient as a matter of law to support a claim for defamation.  *See Jackson v. Mecklenburg County*, 2008 U.S. Dist. LEXIS 104410, *18 (W.D.N.C. July 30, 2008) (dismissing defamation per se claim where plaintiff's allegation was conclusive and did not set forth an allegedly defamatory statement in haec verba).

Paragraphs 10 to 12 of the Complaint similarly fail to plead any alleged defamatory statement with sufficiency.  Nowhere do these allegations quote the Article or specify where and how it alleges that "Mr. Bazzi's 'Mafia' is affiliated with Hezbollah" ( Paragraph 10), that it "has a monopoly on the telecommunications industry in the Gambia" (Paragraph 11), or that "Mr. Bazzi is an owner of an entity known as Prime Bank, which is used to facilitate money laundering operations, and as a 'link to Hezbollah'" (Paragraph 12).  The Plaintiff's "reliance on inferences to be drawn from what is clearly an insufficient claim" rather than including in the Complaint "some description of the statements in haec

4

verba, makes the claim insufficient under Rule 8(a)." *RDLG, LLC v. RPM Group LLC*, 2010 U.S. Dist. LEXIS 142881, *29-30 (W.D.N.C. Dec. 21, 2010)(granting dismissal of defamation claim where plaintiff failed to allege enough facts to demonstrate that the claim was plausible on its face).

In violation of federal pleading standards as well as North Carolina's requirements for pleading defamation claims, the Plaintiff has not provided the allegedly defamatory statements with enough specificity to allow the Court to decide whether they are defamatory. The Complaint thus fails to allege a claim for defamation and fails as a matter of law.

**B.     The Statements Allegedly Made in the Article are not Defamatory Per Se**

Even if sufficiently plead, none of the statements attributed to Defendants in the Complaint are reasonably susceptible on their face to only a defamatory meaning. A complaint for defamation per se must set forth facts that raise the plaintiff's right to relief beyond a merely speculative level. A publication is only "actionable per se, if, when considered alone without innuendo, (1) [i]t charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to ridicule, contempt or disgrace, or (4) it tends to impeach one in his trade or profession." *Ellis v. Northern Star Co.*, 326 N.C. 219, 388 S.E.2d 127 (1990). In order to be libelous per se, defamatory words "must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned or avoided" *Renwick v. News And Observer Pub. Co.*, 310 N.C. 312, 317-18, 312 S.E.2d 405 (1984) (citations omitted). Under North Carolina law, the initial inquiry is "whether the publication is such as to be subject to only one interpretation," and if so, "to determine whether that signification is defamatory." *Renwick*, 310 N.C. at 317.

The alleged defamatory statement that "Mr. Bazzi's 'Mafia' is affiliated with Hezbollah" (Paragraph 10) is clearly susceptible to a non-defamatory meaning. As the Complaint itself recognizes, Hezbollah is a "political party" and one that is part of the ruling coalition in Lebanon as a result of a

5

democratic election.[1]  Therefore, any statement identifying a person or persons--particularly one of Lebanese descent such as the Plaintiff--as a supporter, affiliate, or otherwise connected to Hezbollah could not reasonably be interpreted as solely defamatory in meaning or tending to subject one to ridicule or disgrace much less to suggest that one is "being labeled as a terrorist."  *See* Complaint at ¶ 13.  Such a statement, even if made by the Defendants, could not therefore serve as grounds for defamation per se. *Id.* (where the publication is capable of a defamatory meaning and a non-defamatory meaning, then the action for libel per se cannot lie as a matter of law).

The alleged defamatory statements in Paragraphs 11 and 12 that the "Mr. Bazzi's Mafia has a monopoly on the telecommunications industry in the Gambia" and that "Mr. Bazzi is an owner of an entity known as Prime Bank" similarly cannot support the Plaintiff's claim that these constitute libel per se that has impeached him in his trade and/or profession.  *See* Complaint at ¶ 18.  A statement is defamatory if it tends "to prejudice another in his reputation, office, trade, business, or means of livelihood." *Donovan v. Fiumara*, 114 N.C. App. 524, 526, 442 S.E.2d 572, 574 (1994)(quoting, *Morrow v. Kings Department Stores*, 57 N.C. App. 13, 20, 290 S.E.2d 732, 736, disc. review denied, 306 N.C. 385, 294 S.E.2d 210 (1982)).  It is not clear from the Complaint how either of these two alleged statements would tend to subject the Plaintiff to ridicule or to impeach him in his trade or profession. Indeed, Paragraph 13 of the Complaint expressly states that "being the head of a 'Mafia' group and being labeled as a terrorist" are the only alleged statements that have damaged the Plaintiff's reputation.  The Complaint makes no effort to make any other allegations that Defendants made false statements actually impeaching the Plaintiff in his business or trade. In fact, the Plaintiff does not even reveal the nature of his business or trade in the Complaint,  much less allege that Defendants stated that he was unfit to perform it or performed it poorly.

---

[1] *See* http://en.wikipedia.org/wiki/Hezbollah.

As stated in the Complaint, these facts do not "nudge" Plaintiff's claim of defamation "across the line from conceivable to plausible," and the defamation claim must therefore be dismissed. *See Iqbal*, 129 S. Ct. at 1950.

**C.    The Complaint Does Not Plausibly Allege Defendants Made Any Statements With Actual Malice**

In his Complaint, the Plaintiff does not contest the Article's statements that plaintiff is Gambia's Consul General to Lebanon,  "owns numerous companies in The Gambia," and manages Gambia's National Water & Electricity Company (NAWEC).  As both a public official and a prominent businessman in the Gambia plaintiff is clearly considered a public figure to which North Carolina applies the constitutional malice standard adopted by the Supreme Court.  *See New York Times v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964); *see also Varner v. Bryan*, 113 N.C. App. 697, 440 S.E.2d 295 (1994)(former town manager considered to be a public official); *Ryan v. Brooks*, 634 F.2d 726 (4th Cir. 1980)(regional vice president of telephone company considered to be a public figure).

Defamation claims brought by public figures such as the Plaintiff must allege that the defendants acted with actual malice.  *Id*. at 280.  Actual malice requires proof that party making the statement had a subjective awareness of either the falsity of the defamatory statement, or acted with reckless disregard of its truth or falsity. *Id*. at 279-80; *Varner*, 113 N.C. App. at 703; *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 294 (4th Cir. 2008).  Actual malice must be pled with specificity.  *See, e.g., Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976); *Diario El Pais, S.L. v. Nielsen Co.*, 2008 U.S. Dist. LEXIS 92987, *20 (S.D.N.Y. Nov. 6, 2008)(applying "plausibility" standard in granting a 12(b)(6) motion to dismiss a libel claim where plaintiffs' "conclusory and unsupported assertions" were "insufficient to meet the pleading requirements for actual malice").

The Complaint does not support a plausible inference that the Defendants made any alleged statements with actual malice.  In *Iqbal*, the plaintiff's allegations consisted primarily of a "formulaic recitation" of the claim's elements. 129 S. Ct. at 1951. Here, the Plaintiff's allegations consist entirely of

the formulaic recitation that the "statements were made with actual malice" and the legal conclusion that plaintiff "is not a public figure for the purposes of any defamation analysis." *See* Complaint, ¶¶19, 20. The *Iqbal* Court decided that formulaic recitations like these are not entitled to the presumption of truth, and must be ignored when deciding whether a plaintiff has stated a claim. 129 S. Ct. at 1951. Because plaintiff relies exclusively on conclusory allegations similar to those in *Iqbal*, he fails to state a claim for defamation.

The traditionally disfavored status of defamation claims, particularly those brought against journalists, align well with the heightened pleading requirements of *Twombly* and *Iqbal* and the Supreme Court's concern that "a plaintiff with 'a largely groundless claim" be allowed to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Twombly*, 550 U.S. at 557 (citations omitted). In such situations, courts have also expressed the view that where a complaint attacks "conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Franchise Realty*, 542 F.2d at 1082-83. A public figure such as the Plaintiff should not be allowed to chill the First Amendment rights of a journalist based on threadbare allegations and formulaic recitations that do not meet federal pleading standards. Plaintiff's claim for defamation per se should be dismissed.

II.  <u>Plaintiff Fails to State a Claim for Tortious Interference with Prospective Economic Advantage</u>

Plaintiff lists a separate claim of "Tortious Interference with Prospective Economic Advantage." Complaint, ¶¶22-24. As a preliminary matter, the Plaintiff fails to specify in the Complaint whether he is asserting that the law of a foreign jurisdiction governs this claim. The Complaint also fails to provide any information, such as the location of Plaintiff's business operations or where he claims to have sustained financial injury, necessary to guide this Court's choice-of-law analysis.[2]

---

[2] Federal courts in North Carolina applying North Carolina's choice-of-law rules have followed the *lex loci delicti* doctrine for tortious interference claims, applying the law of the state where the plaintiff was

Under the procedural law[3] of North Carolina, "[t]he party seeking to have the law of a foreign jurisdiction apply has the burden of bringing such law to the attention of the court." *Leonard v. Johns-Manville Sales Corp.*, 309 N.C. 91, 95, 305 S.E.2d 528, 531 (1983). "If the foreign jurisdiction has no law, either statutory or decisional, on the question involved, the courts of this state will not speculate what law such jurisdiction might adopt and will apply the law of North Carolina." *Id.*; *see also Ugochukwu v. Ugochukwu,* 176 N.C. App. 741, 744, 627 S.E.2d 625, 628 (2006)(declining to overturn trial court's failure to apply English law to child support order where plaintiff "failed to raise either by the pleadings or any other reasonable written notice that an issue regarding foreign law existed").

Presuming that North Carolina law applies to Plaintiff's tortious interference claim, the Complaint does not allege the essential elements of such a claim under North Carolina law nor does it contain sufficient factual bases to support the cause of action. Therefore, Plaintiff's claim of tortious interference with prospective economic advantage should be dismissed.

A.    **Interference Claims Based Upon Alleged Defamation Fail When The Defamation Claim Fails**

---

injured. *See N.C. Mut. Life Ins. Co. v. McKinley Fin. Servs.*, 386 F. Supp. 2d 648, 658 (M.D.N.C. 2005) (applying Florida law to tortious interference claim because the last event was the injury that occurred in Florida where the third party plaintiff was located and experienced economic loss); *Speedway Promoters, Inc. v. Hooter's of Am., Inc.*, 123 F. Supp. 2d 956, 962 (W.D.N.C. 2000)  (applying North Carolina law to tortious interference claim because plaintiff sustained injury at its business location in North Carolina when defendant stop performing under contract)

[3] North Carolina General Statutes § 8-4 (2011) states:

> "When any question shall arise as to the law of . . . any foreign country, the court shall take notice of such law in the same manner as if the question arose under the law of this State."

The North Carolina Rules of Civil Procedure state, in pertinent part:

> "A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or by other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under Chapter 8 of the General Statutes and State law. The court's determination shall be treated as a ruling on a question of law."

N.C. Gen. Stat. § 1A-1, Rule 44.1 (2011).

Most fundamentally, the Plaintiff's claim for tortious interference with prospective economic advantage fails because, when plaintiffs premise their tortious interference claims on the same grounds as a defamation claim that fails as a matter of law, plaintiffs cannot sustain their separate tortious interference claims. Plaintiff's claim of tortious interference with prospective economic advantage must therefore be dismissed with his defamation claim.

**B.** **The Complaint Does Not Plausibly Allege Any Potential Contract Knowingly or Intentionally Frustrated by the Defendants**

A claim for tortious interference with prospective economic advantage under North Carolina law has three elements: (1) the defendant acted without justification; (2) in intentionally inducing a third party to refrain from entering a contract; and (3) such contract would have ensued but for the interference. *Dalton v. Camp,* 353 N.C. 647, 548 S.E.2d 704 (2001). For such claims, "[d]ismissal under Rule 12(b)(6) is proper when on its face the complaint reveals either no law supports the plaintiff's claim or the absence of facts sufficient to make a good claim, or when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Esancy v. Quinn*, 2006 U.S. Dist. LEXIS 8479, at *3 (W.D.N.C. 2006) (quoting *Andrews v. Elliot*, 109 N.C.App. 271, 274, 426 S.E.2d 430 (1993).

First, the absence of any allegations in the Complaint showing an intentional inducement of a third party requires the dismissal of this claim. *See Walker v. Sloan*, 137 N.C.App. 387, 395, 529 S.E.2d 236, 242 (2000) (granting motion to dismiss tortious interference claim). Tortious interference is an intentional tort and requires affirmative action by the alleged tortfeasor to induce the non-performance. *Bassett Seamless Guttering, Inc. v. GutterGuard, LLC,* 501 F. Supp. 2d 738, 742-743 (M.D.N.C. 2007) ("Essential to the definition of induce is *an act* that would cause one party to choose one course of conduct rather than another.") (emphasis added). Therefore, a plaintiff must allege that the defendant had knowledge of the prospective business relationship and intentionally acted to induce non-performance. 1 *William S. Haynes. North Carolina Tort Law*, §13-3 (1989) ("there can be no liability where the party sought to be charged had no prior knowledge of the business relationship or expectancy and where he acted in good faith in pursuit of his own legitimate interest"); *Smith v. Ford Motor Co.*, 289 N.C. 71, 84

(N.C. 1976)(an action for tortious interference "lies against an outsider who knowingly, intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party.")(quoting *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176 (1954).

The Plaintiff here does not allege that the Defendants had any knowledge of the one prospective contract specified in the Complaint, the "large government contract in the Ivory Coast." Nor does the Complaint specify how the Defendants acted intentionally to interfere with this contract other than the improper "formulaic recitation" that Defendants published the Article with "intent to harm Mr. Bazzi's business" and that it "induced third parties to refrain from entering into contracts with Bazzi."[4] Complaint, ¶¶ 23-24. Alleging only that Defendants published defamatory statements in the Article without making any other allegations that they knowingly or intentionally interfered with the prospective economic relationship identified in the Complaint is not sufficient to support Plaintiff's tortious interference claim. *Holleman v. Aiken*, 193 N.C. App. 484, 500-01, 668 S.E.2d 579, 590 (2008)(dismissing tortious interference claim where plaintiff failed to allege that any of the defendants had actual knowledge of the contract or intentionally induced the literary agent not to perform). It should therefore be dismissed.

## C. The Complaint Does Not Plausibly Allege that Defendants Acted Without Justification

Finally, the interference claim fails because the plaintiff has not properly pled that the Defendants' actions were unjustified and taken only for purposes of malice. As such his claim is deficient as a matter of law.

Whether a defendant is justified in interfering with a plaintiff's contract or business expectancy depends upon "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the

---

[4] Because a plaintiff must allege a "particular prospective relationship with which defendant tortiously interfered," the plaintiff's claim should be judged solely on the one prospective contract identified in the Complaint and not on any other unspecified contracts or prospective relationships. *Burgess v. Busby*, 142 N.C. App. 393, 404, 544 S.E.2d 4, 10, *disc. rev. denied*, 354 N.C. 351, 553 S.E.2d 674 (2001).

contractual interests of the other party." *Robinson, Bradshaw & Hinson, P.A.*, 129 N.C. App. at 317-18, 498 S.E.2d at 850 (quoting *Peoples Security Life Ins. Co. v. Hooks,* 322 N.C. 216, 221, 367 S.E.2d 647, 650, *reh'g denied*, 322 N.C. 486, 370 S.E.2d 227 (1988)). "Bad motive is the essence of a claim for tortious interference with contract." *Bloch v. Paul Revere Life Ins. Co.*, 143 N.C. App. 228, 239-240 (2001).

The sole act that is the basis for plaintiff's tortious interference claim, the publication of the Article, is not sufficient to support an allegation that the Defendants acted unjustifiably or with malice. Indeed, society has a keen interest in protecting the freedom of journalists such as the Defendants to publish stories regarding the actions of public figures without fear that their articles will subject them to legal action because they may impact the prospective business relationships of their subjects. Therefore where, as here, a plaintiff has failed to properly allege either the defendants' malice or any lack of justification for their actions, and the Complaint reveals on its face a legitimate business purpose for defendants' alleged actions, the pleading is deficient and the interference claims cannot stand. *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221-22, 367 S.E.2d 647, 650 (1988); *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 675, 541 S.E.2d 733, 738 (2001).


III.     Plaintiff Fails to State a Claim for Punitive Damages and Permanent Injunctive Relief

A.     **The Complaint Improperly Pleads Punitive Damages and Injunctive Relief as Causes of Action**

Plaintiff's Claims III and IV are for Punitive Damages and Permanent Injunctive Relief. Punitive damages and equitable relief, however, are not separate causes of action, but instead constitute requests for relief. *Eli Research Inc. v. United Communs. Group, LLC*, 312 F. Supp. 2d 748, 764 (M.D.N.C. 2004) ("claims for punitive damages and injunctive relief do not exist as unique causes of action per se"). Accordingly the Court should dismiss plaintiff's Claims III and IV and consider punitive damages and injunctive relief only as a part of Plaintiff's prayer for relief in conjunction with any remaining claims. *Haylash v. Volvo Trucks N. Am.*, 1998 U.S. Dist. LEXIS 12511, *8-9 (D.N.C. Apr. 10, 1998)(granting

motion to dismiss plaintiff's claims for punitive damages and injunctive relief specifically labeled as causes of action but agreeing to consider them as part of the plaintiff's prayer for judgment).

**B.  The Complaint Fails to Sufficiently Allege Facts Supporting Punitive Damages**

Under North Carolina law, a plaintiff may recover punitive damages only by proving a defendant's liability for compensatory damages and the existence of at least one aggravating factor such as fraud, malice, or willful, or wanton conduct. N.C. Gen. Stat. § 1D-15.  A defendant acts with malice "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or  injurious to another." *Thomas v. Sellers*, 142 N.C. App. 310, 313, 542 S.E.2d 283, 286 (2001).  Similarly, "'[w]illful or wanton conduct' means the conscious and intentional disregard of and  indifference to the rights and safety of others, which the defendant knows or should know is  reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence." N.C. Gen. Stat. § 1D-5(7).

In this case, Plaintiff alleges only that Defendant's conduct was "willful and with a malicious attempt to damage Plaintiff's reputation." Complaint ¶ 26.  These allegations are insufficient to support a claim for punitive damages under North Carolina law.  A "conclusory assertion of malicious conduct in the plaintiff's complaint is not taken as true upon review of a motion to dismiss" and is insufficient to support a claim for  punitive damages. *Shella v. Foster*, 2006 N.C. App. LEXIS 1216, *6 (N.C. Ct. App. June 6, 2006).  Because Plaintiff has failed to present any facts supporting fraud, malice, or willful or wanton conduct by Defendants, his claim for punitive damages is insufficient and must be dismissed.

**C.  The Complaint Fails to Show Why Plaintiff Should be Entitled to Injunctive Relief Against the Defendants**

Plaintiff's proposed injunctive relief is so broad that it seeks to enjoin Defendants from ever "publishing any articles that mention Plaintiff," as well as requiring Defendants "to remove all existing articles mentioning Plaintiff."   The Complaint provides no basis for any such relief even assuming that under some extraordinary circumstances an injunction could be constitutionally issued to prevent tortious speech.

13

"One principle long adhered to in defamation cases is that courts will not enjoin libels." Robert D. Sack, *Sack on Defamation* § 10.6.1 at 10-54 (3d ed. 1999) (citations omitted). "The absoluteness of the rule is critical. It forecloses the possibility of frequent lawsuits based upon a person's fear that adverse commentary is about to be published." *Id*. The Supreme Court has consistently rejected attempts to enjoin allegedly defamatory statements. In *Near v. Minnesota*, 283 U.S. 697 (1931), the Court examined the constitutionality of a statute that authorized issuance of an injunction against a "defamatory newspaper." Despite the fact that there was little doubt that the defendants in the *Near* case had engaged in extensive defamatory publication before the injunction was requested, the Court nonetheless invalidated the statute at issue because of the threat to freedom of speech posed by injunctions against defamation. The Supreme Court later emphasized this principle in *Organization For A Better Austin v. Keefe*, 402 U.S. 415, 419 (1971), in which it stated that "[a]ny prior restraint on expression comes to [the Supreme] Court with a 'heavy presumption' against its constitutional validity."

The First Amendment principle that threatened defamation cannot be enjoined is consistent with the decisions of other courts. Federal courts have held that while it is conceptually possible to obtain an injunction against threatened defamatory speech, they almost never should be granted. *See Metropolitan Opera Association v. Local 100, Hotel Employees & Restaurant Employees International Union*, 239 F.3d 172 (2d Cir. 2001) (holding extraordinary circumstances such as intimidation and coercion must be present). Other cases examining attempts to enjoin defamation have likewise held injunctions against threatened defamatory speech to strict standards of review. *See, e.g., Sunward Corp. v. Dun & Bradstreet, Inc.*, 568 F. Supp. 602 (D. Colo. 1983) (denying injunction), *aff'd in part and rev'd in part on other grounds*, 811 F.2d 511 (10th Cir. 1987); *Lemons v. Myco Group Co.*, 667 F. Supp. 665 (S.D. Iowa 1987) (same).

In cases based on alleged tortious interference with business relations such as *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982), and *Carrroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175 (1968), the Supreme Court has required the application of strict scrutiny when evaluating injunctions against speech. The applicability of this test has rendered the granting of injunctions against

tortious interference a virtual impossibility because plaintiffs only rarely can show a compelling governmental interest in enjoining speech. Particularly where the target of a tortious interference claim is a news, media, or not-for-profit organization expressing its views regarding a public controversy, courts have been unwilling to grant plaintiffs any relief. *See, e.g., Searle v. Johnson*, 709 P.2d 328 (Utah 1985) (holding the First Amendment bars a claim by businesses against the Humane Society for interference with prospective economic relations through a campaign to discourage tourists from visiting a county in order to increase public awareness of dog pound conditions).

Finally, it may not be possible ever to enjoin defamatory speech on a preliminary basis, because, among other reasons, an injunction against future publication must rest on a final judicial determination that the speech at issue is not protected by the First Amendment. *See Freedman v. Maryland*, 380 U.S. 51 (1965).

Plaintiff has failed in his Complaint to make any allegations necessary to justify the extraordinary injunctive relief he is seeking, especially in light of Defendant's First Amendment rights and the courts' strong presumption against enjoining defendants in libel cases. Claim IV should be dismissed.

IV.    <u>Plaintiff's Allegations in Paragraph 29 of the Complaint Should be Stricken</u>

To the extent the Court finds that any of Plaintiff's claims remain after ruling on Defendants' motion to dismiss, Defendants respectfully request that the allegations in Paragraph 29 of the Complaint be stricken as immaterial, impertinent, or scandalous under Fed. R. Civ. P. 12(f).

Paragraph 29 contains a number of allegations regarding Defendants' alleged failure to abide by an injunction imposed by a Summary Procedures Judge in Beirut. These allegations are immaterial, impertinent, and have no basis in fact. A review of the order (attached at Exhibit B[5]) providing the supposed basis for the claims made in Paragraph 29 reveals that not only is the order directed at an unrelated third party (a Lebanese news website called "elnashra.com") but there is also not a single

---

[5] A copy of the order issued by the Summary Procedures Judge in Beirut was not attached as an exhibit to the Complaint but was obtained by Defendant upon request from Plaintiff's counsel in this action.

mention of the Defendants in the order or any evidence to suggest that they were even a party to the proceeding. Accordingly, the Court should strike Paragraph 29 of the Complaint.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss and Motion to Strike and dismiss Claims I, II, III, and IV of the Complaint with prejudice, strike Paragraph 29 of the Complaint, and award any further relief that the Court deems just and proper.

Respectfully submitted, this 29th day of September, 2011.

HUNTON & WILLIAMS LLP

<u>/s/  Sean M. Braswell</u>
Sean M. Braswell
N.C. State Bar No. 36646
Douglas W. Kenyon
N.C. State Bar No. 13242
P. O. Box 109
Raleigh, NC  27602
(919) 899-3000
(919) 833-6352 (fax)
*Attorneys for Defendants, Pa Nderry M'Bai*
*and Freedom Newspaper, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 29, 2011, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to any of the following parties that are registered for service electronically, and that all other parties not so registered have been duly served by depositing a copy of the same in the United States mail, first class, postage prepaid, in envelope(s) addressed as follows:

> Edward H. Maginnis
> Maginnis Law, PLLC
> 19 West Hargett Street, Suite 906
> Raleigh, NC 27601

This the 29th day of September, 2011.

/s/ Sean M. Braswell
HUNTON & WILLIAMS LLP
421 Fayetteville Street Mall, Suite 1400
Raleigh, North Carolina 27601
(919) 899-3000
(919) 833-6352 ~ fax
*Attorneys for Defendants*
