IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| MUHAMMED BAZZI, ) | |
| ) | |
| ) | Case No. 5:11-cv-353-H |
| Plaintiff, ) | |
| ) | JUDGE MALCOLM J. HOWARD |
| v. ) | |
| ) | |
| PA NDERRY MBAI, FREEDOM NEWSPAPER, ) | |
| INC., and JOHN DOE, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF MUHAMMED BAZZI'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW Plaintiff Muhammed Bazzi ("Mr. Bazzi" or "Plaintiff"), by counsel, and hereby submits his opposition to the Motion to Dismiss and Memorandum in Support (collectively, the "Motion") filed by Defendants Pa Nderry Mbai ("Mbai") and Freedom Newspaper, Inc. ("Freedom") (collectively, "Defendants"). In support, Plaintiff states as follows.

## NATURE OF THE ACTION

This action relates to a publication dated February 26, 2011 in Freedom written by Defendant Mbai (the "Article").[1] The Article accused Mr. Bazzi, *inter alia*, of being the head of a "Bazzi Mafia" which committed such flagrant criminal acts as weapons trafficking, drug trafficking, money laundering, robbing from the citizens of The Gambia, monopolizing all petroleum products and telecommunications in The Gambia, and also alleges that Mr. Bazzi was affiliated with the terrorist organization Hezbollah.

---

[1] A copy of the Article with numbered paragraphs added is attached hereto as Exhibit A

1

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff filed his Complaint on June 29, 2011. Following service, Defendants filed their Motion on September 29, 2011. This Opposition is timely filed on October 20, 2011.

## ARGUMENT

### I. Plaintiff Has Adequately Stated a Claim for Defamation

#### A. The Complaint Identifies False and Defamatory Statements With Sufficient Specificity

Defendants first argue that the defamatory statements outlined in the Complaint are not identified with sufficient specificity. In fact, Plaintiff's Complaint quotes some of the defamatory statements outlined in Defendant's Article verbatim and modifies other defamatory statements from the Article only to the extent necessary to provide the Court and the parties with a short and plain statement of the claim as required by Rule 8 of the Federal Rules of Civil Procedure.

For example, the Complaint quotes the Article's accusation of Plaintiff being the head of a "Bazzi Mafia." Complaint at ¶ 7. The Article specifically uses the term "Bazzi Mafia." Article at ¶¶ 13, 17, 19.

The Complaint states that the Article "alleges that Mr. Bazzi is an owner of an entity known as Prime Bank, which is used to facilitate money laundering operations, and as a 'link to Hezbollah.'" Complaint at ¶ 12. The Article states that "Bazzi register[ed] his own money laundering 1-branch bank called Prime Bank" and that Prime Bank is one of LCB's (Lebanese Canadian Bank) "other links to Hezbollah." Article at ¶ 15.

The Complaint states that the Article alleges that Bazzi's "'Mafia' is involved in a staggering number of criminal enterprises, including weapons trafficking; drug trafficking;

2

money laundering; robbing from the citizens of The Gambia; and monopolizing all petroleum products and telecommunications in The Gambia." Complaint at ¶ 9. The Article states that:

- Bazzi "was the conduit between Iranian arms and Hezbollah," i.e. weapons trafficking, Article at ¶ 16;

- That "most of the drugs [President] Jammeh was selling were distributed [through Bazzi] at one point through Hezbollah," i.e. drug trafficking, *Id*;

- That he "register[ed] his own money laundering 1-branch bank called Prime Bank," i.e. money laundering, Article at ¶ 15;

- That Bazzi is "robbing The Gambian people," i.e. robbing from the citizens of The Gambia, Article at ¶ 19;

- That Bazzi came "up with a plan to be awarded a monopoly for the sale of all petroleum products in the Gambia," i.e. monopolizing all petroleum products in The Gambia, Article at ¶ 10.

- And that he is "in control of all telecommunications in The Gambia," i.e. monopolizing all telecommunications in The Gambia Article at ¶ 13.

Defendants contend that *Jackson v. Mecklenburg County*, 2008 U.S. Dist. LEXIS 104410, *18 (W.D.N.C. July 30, 2008) is instructive, based on its holding that broad, conclusive allegations are insufficient as a matter of law to support a claim for defamation. In *Jackson*, the Court ruled that an allegation that the defendant "generally makes 'racist, inflammatory, and hateful personal remarks'" was insufficient to support a claim for defamation. *Id.*

There is nothing general – nor is there anything "confusing or misleading," Motion at 4 – about the allegations set forth in the Complaint; each allegation is specifically linked to a false defamatory statement published by Defendants in the Article. As noted correctly by the

Defendants, the defamatory statements do not have to be repeated verbatim, merely with enough specificity to allow the Court to decide if the statement is defamatory. *See Jolly v. Acad. Collection Serv.,* 400 F. Supp 2d 851, 861 (M.D.N.C. 2005).

Even if there were a requirement for exact quotes, the Article's references to a "Bazzi Mafia" and noting Plaintiff's "link to Hezbollah," are quoted accurately in the Complaint. Based solely on those quotes, the Court could determine that the Article is defamatory. If necessary, the additional allegations are certainly pled with enough specificity for this Court to determine whether or not the statements are defamatory.

**B. The Statements Made in the Article are Defamatory Per Se:**

Defendants next suggest that the statements made in the Article are not defamatory *per se*. Specifically, Defendants claim that the Article's statements alleging that Plaintiff is affiliated with Hezbollah are susceptible to a non-defamatory meaning and therefore not defamatory *per se*.

"In determining whether publications are susceptible of only one meaning, and that a defamatory meaning, so as to be libelous per se: [t]he principle of common sense requires that courts shall understand them as other people would. The question always is how would ordinary men naturally understand the publication? The fact that supersensitive persons with morbid imaginations may be able, by reading between the lines of an article, to discover some defamatory meaning therein is not sufficient to make them libelous. In determining whether the article is libelous *per se* the article alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. The article must be defamatory on its face 'within the four corners thereof.'" *Renwick v. News and Observer Pub. Co.,* 312 S.E. 2d 405, 409, 310 N.C. 312, 318 (1984) (internal citations omitted). The publication is considered "as a

whole, looking at the alleged defamatory statements, within the 'four corners of the document.'" *Nucor Corp. v. Prudential Equity Group*, 659 S.E. 2d 483 (N.C. Ct. App. 2008) (citation omitted).

In looking at the Article as a whole, Defendants claim that the Article's reference to Hezbollah are clearly susceptible to a non-defamatory meaning in that the references to a "Hezbollah" could refer to the Hezbollah political party that is "part of the ruling coalition in Lebanon as a result of a democratic election." Motion at 10-11. The Article, of course, has no reference to the Lebanese system of government. In fact, the *very first sentence* of the Article reads as follows: "[t]here is a Hezbollah cartel in Banjul, who are acting in concert with the country's President Yahya Jammeh to sell arms to the **terrorist group's** main base in Lebanon." Article ¶ 1 (emphasis added). Any explanatory circumstances that relate to a meaning for Hezbollah other than as a terrorist group are only added by the Defendants in their Motion. There is nothing in the Article which refers to anything other than alleged illegal activities, and it would be impossible for a reasonable person to read the Article in any other fashion.

Defendants also contend that the other statements in the Article are not actionable as a claim for defamation *per se*. Defendants note that "a publication is actionable per se, if, when considered alone without innuendo, (1) [i]t charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to ridicule, contempt, or disgrace; or (4) it tends to impeach one in his trade or profession." *Ellis v. Northern Star Co.*, 326 N.C. 219, 224, 388 S.E. 2d 127, 130 (1990). An infamous crime "includes any anything done contrary to justice, honesty, modesty, or good morals." *Richardson v. Mancil*, 706 S.E. 2d 843 (N.C. Ct. App. 2010) (citing *State v. Mann*, 317 N.C. 164, 170, 345 S.E.2d 365, 369 (1986)). Crimes involving moral turpitude include "acts of baseness, vileness, or

5

depravity in the private and social duties that a man owes to his fellowman or to society in general." *Id.* (citing *Dew v. State ex. Rel. N.C. Dep't of Motor Vehicles*, 127 N.C. App. 309, 211 488 S.E.2d 836, 837 (1997)). Moral turpitude may also be defined as "[c]onduct that is contrary to justice, honesty, or morality." *Id. citing* Black's Law Dictionary, 1101 (9th Ed. 2009). Statements involving misappropriation of funds appear to fall squarely within the ambit of infamous crimes and/or crimes involving moral turpitude. *Id.*

In *Mancil*, the Court ruled that statements involving embezzlement were actionable *per se*. Many of the statements in the Article as pled in the Complaint allege that Mr. Bazzi is engaging in similar activities; specifically that he is engaging in "money laundering" and "robbing from the citizens of The Gambia." Complaint at ¶ 9; Article at ¶¶ 15, 19. Links to being part of a "terrorist group" or a "Mafia" are as infamous or vile, if not more so. They certainly constitute an act of infamous crimes and/or moral turpitude under North Carolina law.

Defendants also claim that the Article's statements do not prejudice Mr. Bazzi in his trade or profession. A statement is defamatory if it tends to prejudice another in his reputation, office, trade, business or means of livelihood. *Morrow v. Kings Department Stores*, 57 N.C. App. 13, 20, 290 S.E. 2d 732, 736, *disc. review denied*, 306 N.C. 385, 294 S.E. 2d 210 (1982). The allegations set forth in the Article are about a purported investigation of Mr. Bazzi's "business activities in The Gambia." Article at ¶ 7. The litany of criminal activities alleged in the Complaint that relate to Mr. Bazzi's business activities, including his purported affiliation with a terrorist group, of course prejudice Mr. Bazzi's future business activities. *See* Complaint ¶¶ 13-14.

As the Complaint sets forth defamatory statements from the Article, with no other credible non-defamatory interpretations, that relate to infamous crimes, moral turpitude, and Mr. Bazzi's businesses activities, Plaintiffs have clearly stated a claim for defamation per se.

### C. The Complaint Plausibly Alleges Actual Malice:

Defendants also claim that the Complaint does not allege any actual malice towards Mr. Bazzi. Under North Carolina law, defamation claims brought by public figures must allege that the defendants acted with actual malice. *See New York Times v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). Defendants allege that Mr. Bazzi is "clearly" a public figure. Motion at 12.

Initially, even if Mr. Bazzi were a public figure for the purpose of the *Sullivan* constitutional analysis, when a statement falls among statements which are defamatory *per se*, a prima facie presumption of malice arises. *Ausley v. Bishop*, 133 N.C.App. 210, 214 515 S.E. 2d. 72, 76 (1999). As noted above, there is little doubt that the statements from the Article are *per se* defamatory. As such, malice is presumed and the Complaint meets the burdens associated with a potential public figure status.

Stating further, Defendants have not met their substantial burden in establishing that the Plaintiff is indeed a public figure under *Sullivan* and its progeny. *See e.g. Wolston v. Readers Digest Association, Inc.*, 443 US 157, 168 (1979) (*citing Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976)) (A libel defendant must show more than mere newsworthiness to justify application of the demanding burden of *Sullivan*).

In their Motion, Defendants only note the Plaintiff is "clearly" a public figure. Motion at 12. They submit no evidence whatsoever to support that "clear" conclusion. Defendants have not alleged whether they consider the Plaintiff to be a "public figure for all purposes" or whether

7

he is a "limited purpose public figure." *See e.g. Foretich v. Capital Cities/ABC, Inc.*, 37 F. 3d 1541, 1551 (4th Cir. 1994). If Defendants allege that Plaintiff is a limited purpose public figure, they have not set forth any proof to support a finding under the multi-factor test used to determine that capacity. *Id*. at 1551-1553.

The statements made in the Article and properly pled in the Complaint are *per se* defamatory and therefore malice is presumed. Even if malice is not presumed, Defendants have not asserted any basis as to why a finding of malice would be required as Defendants have submitted nothing which addresses the analyses properly undertaken to determine whether or not an individual is a public figure.

As Plaintiff has set forth the Article's defamatory statements – some verbatim and some in such specific manner as to allow the Court to find that the statements were defamatory – and have adequately pled a case for defamation per se, Defendant's Motion as to the defamation claim should be denied.

## II. Plaintiff Has Adequately Stated a Claim for Tortious Interference With Prospective Economic Advantage

Defendants next claim that the Complaint fails to state a claim for Tortious Interference with Prospective Economic Advantage.[2] To establish tortious interference with prospective economic advantage, a plaintiff must show that the defendant, without justification, induced a third party to refrain from entering into a contract with the plaintiff which would have been made absent the defendant's interference, *Dalton v. Camp*, 138 N.C. App. 201, 211, 531 S.E. 2d 258, 265 (2000), *rev'd on other grounds*, 353 N.C. 647, 548 S.E. 2d 704 (2001). "A thread running

---

[2] Plaintiff agrees that North Carolina law applies to this claim. Defendants are citizens of North Carolina and subject to the laws of North Carolina including, but not limited to, a claim for tortious interference with prospective economic advantage.

through each of these [tortious interference with prospective economic advantage] actions is the requirement that plaintiffs must show a malicious, unjustifiable action by defendants resulting in the interference of plaintiffs' economic relations." *Cameron v. New Hanover Memorial Hospital*, 58 N.C.App. 414, 293 S.E. 2d 901, 917 (1982).

Defendants appear to assert that Plaintiffs must allege that Defendants had actual knowledge of a specific prospective business relationship in order to proceed with their claim. However, Defendants do not cite to valid authority which dictates that requirement.

Defendants rely upon *Holleman v. Aiken*, 193 N.C. App. 484, 500-501, 668 S.E.2d 579, 590 (2008) – which involved tortious interference with contract and not tortious interference with prospective economic advantage – and perhaps seek to rely upon *Burgess v. Busby*, 142 N.C. App. 393, 404, 544 S.E. 2d 4, 10 *disc review denied*, 354 N.C. 351, 553 S.E.2d 674 (2001). As stated above, the court in *Aiken* ruled on a tortious interference with contract matter, which is not the claim before the Court. Accordingly, *Aiken* is irrelevant for the purposes of this analysis.

Defendants rely upon *Burgess* to state that the Plaintiff must state a "particular prospective relationship with which defendant tortiously interfered." To the extent that Defendants view *Burgess* as authority for the proposition that Defendant must know about the relationship, there is no support for that viewpoint. In fact, the quote cited in *Burgess* provides no value to the Court whatsoever. The tortious interference for prospective economic advantage claim in that matter was dismissed because the Court ruled that it had "no basis for believing that such a cause of action [interference with prospective economic relations] even exists in North Carolina." *Burgess*, at 404, 544 S.E.2d at 10. Defendants' purported authority for the requirement of a pled "particular prospective relationship" is either overruled, *dicta*, or used in conjunction with the court's denial of the tortious interference with contract claim. In any event,

9

it certainly does not stand for the proposition that a specific prospective business relationship must have been known by the Plaintiff.

If, on the other hand, Defendants claim that they had no knowledge of Plaintiff's purported business relations generally, then Defendants' entire Article was not based in fact. If Defendants claim that the Article's factual assertions accurately characterize Mr. Bazzi's business relations, then, *ipso facto*, they must have been aware of his business relations, and the potential impact of the Article upon them.

Defendants also claim that the Complaint does not allege that the actions of Defendants' were unjustified and taken only for the purposes of malice. As stated above, actions that are defamatory per se are presumed to be malicious. *Ausley*, at 214, 515 S.E. 2d. at 76.

Plaintiff has alleged properly Defendants' Article induced third parties, at least one of which is General Electric, to back out of a proposed joint venture that would have ensued if not for Defendants' Article. Complaint ¶¶ 14, 24. Plaintiff has alleged properly that these actions were unjustified and taken only for the purpose of malice. Accordingly, Defendants' Motion as to Claim II of the Complaint should be denied.

### III. Plaintiff Has Adequately Alleged an Entitlement to Punitive Damages and Injunctive Relief:

Additionally, Defendants claim that Plaintiff has not adequately alleged that he is entitled to punitive damages.[3] Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud; (2) Malice; or (3) Willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a). Willful or

---

[3] If the Court opts to dismiss Claim III of the Complaint while still allowing the Plaintiff to pursue punitive damages for aggravating factors relating to Claims I and II, Plaintiff has no objection.

10

wanton conduct means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know, is reasonably likely to result in injury, damage, or other harm.  N.C. Gen. Stat. § 1D-5(7).

Initially, as stated above, allegations of per se defamatory statements are presumed to be malicious.  *Ausley*, at 214, 515 S.E.2d at 76.   Accordingly, the facts which demonstrate properly pled allegations of defamation per se also support Plaintiff's claim that the Article was malicious in such a manner as to support a request for punitive damages.  Additionally, the facts as alleged are certainly sufficient to support a finding that the Defendants exhibited willful or wanton conduct, as defined by the General Statutes.  Accordingly, Plaintiffs are entitled to proceed with its attempt to have punitive damages levied against the Defendant.

Defendants also seek to dismiss Plaintiff's request for an injunctive relief.  The basis for this portion of Defendants' Motion appears to be arguing the merits of whether or not an injunction would be appropriate, and not whether Plaintiffs have sufficiently pled its request for injunctive relief.

While Plaintiff disagrees with Defendants' arguments regarding the injunction, this Opposition is not the appropriate place to assert those disagreements and argue the merits of the proposed injunction against Defendants.  Defendants have not stated any authority which suggests that Plaintiff's request *should not even be heard*.  Accordingly, to the extent that Section III-C of the Motion is an opposition to the request for injunctive relief, the request should be denied as untimely or stayed until the parties have had a proper opportunity to have a hearing on the merits.  To the extent that Section III-C of the Motion is a motion to dismiss seeking to preclude this Court from having a hearing regarding injunctive relief, it should simply be denied.

11

Case 5:11-cv-00353-H   Document 9   Filed 10/20/11   Page 11 of 13

WHEREFORE, Plaintiff requests that Defendants' Motion be denied.

Respectfully submitted this 20th day of October, 2011.

        /s/ Edward H. Maginnis
        Edward H. Maginnis (Bar No. 39317)
        Maginnis Law, PLLC
        19 West Hargett Street, Suite 906
        Raleigh, NC 27601
        Telephone: 919-526-0450
        Facsimile: 919-882-8763
        emaginnis@maginnislaw.com
        *Counsel for Muhammed Bazzi*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2011, I caused true and correct copies of the foregoing Opposition to Defendants' Motion to Dismiss to be served on the following counsel registered with the CM/ECF system.

Sean M. Braswell
Douglas W. Kenyon
Hunton & Williams LLP
P.O. Box 109
Raleigh, NC 27602

/s/ Edward H. Maginnis
Edward H. Maginnis